**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JOHN A.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-2514** |
| **FRANK BISIGNANO,** | * | |
| **Commissioner of Social Security,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

**MEMORANDUM OPINION**

On August 1, 2025, Plaintiff John A. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying his claim for benefits.  ECF No. 1.  This case was referred to a United States Magistrate Judge with the parties' consent.[1] ECF Nos. 2–4; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending before the Court is Plaintiff's appeal, which is fully briefed.  ECF Nos. 10, 13–14.  No hearing is necessary. Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion.

## I.    BACKGROUND

The instant action is Plaintiff's third appeal in connection with his claim for benefits. Following an overview of the procedural history of this case and the applicable statutory framework is a discussion of the pertinent sections of the prior administrative decisions and the operative administrative decision at issue in this appeal.

---

[1]  This case was reassigned to the undersigned on April 9, 2026.

**A.**      **Procedural History**

In 2017, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 *et seq.*, alleging a disability onset date of October 26, 2015.[2]  ECF No. 6-1 at 154.[3]  Plaintiff claimed that he was disabled within the meaning of the Act because he is unable to work due to post traumatic stress disorder (PTSD), depressive disorder, anxiety disorder, degenerative disk disease (cervical and thoracic), issues with the left hip and left hand and arm, obstructive sleep apnea, diabetes mellitus, hypertension, obesity, and right knee instability.  ECF No. 6-2 at 98.  After the SSA denied Plaintiff's application for benefits, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  ECF No. 6-1 at 36, 69, 73.  On February 27, 2019, the ALJ rendered a decision (ALJ Decision I) in which he found that Plaintiff was not disabled within the meaning of the Act.  *Id.* at 13–26.  The Appeals Council denied Plaintiff's request for review on February 25, 2020.  *Id.* at 7.

On April 20, 2020, Plaintiff filed suit in this Court seeking review of ALJ Decision I.  ECF No. 6-2 at 153; *John A.* v. *Kijakazi*, Civil Action No. TJS-20-997, 2021 WL 4025838 (D. Md. Sept. 3, 2021) (*John A. I*).  On September 3, 2021, this Court reversed the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g).  *Id.* at *4.  On December 3, 2021, the Appeals Council vacated ALJ Decision I and remanded the case to a second ALJ.  ECF No. 6-2 at 167.  The second ALJ held a hearing and rendered a decision (ALJ Decision II) on February 1, 2023, in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 6-2 at 68–83.  On April 4, 2023, Plaintiff again filed suit in this

---

[2]  "Title II 'provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need.'"  *Smith* v. *Berryhill*, 587 U.S. 471, 475 (2019) (quoting *Bowen* v. *Galbreath*, 485 U.S. 74, 75 (1988)).

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

Court seeking review of ALJ Decision II.  *John A.* v. *O'Malley*, Civil Action No. CDA-23-905, 2024 WL 1465925 (D. Md. Apr. 4, 2024) (*John A. II*).  On April 4, 2024, this Court reversed the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g). *Id.* at *4.  On May 8, 2024, the Appeals Council vacated ALJ Decision II and remanded the case to the second ALJ.  ECF No. 6-9 at 57.  The second ALJ held two hearings and rendered a decision (ALJ Decision III) on May 30, 2025, in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF Nos. 6-8 at 116–132, 140–160; 6-9 at 1–29.  On August 1, 2025, Plaintiff filed the instant action seeking review of ALJ Decision III.  ECF No. 1.

**B.      Statutory Framework**

The Act authorizes Disability Insurance Benefit payments to every insured individual who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy."  *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)).  "The applicant bears the burden of production and proof

3

during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies the third step, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (citations omitted). If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179-180 (4th Cir. 2016). Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations." 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. § 404.1520(e); *Monroe*, 826 F.3d at 179-180.

C.    **ALJ Decision I and *John A. I***

After engaging the five-step sequential evaluation, the first ALJ determined that Plaintiff was not "under a disability" as defined in the Act, and the SSA properly denied his application for benefits. ECF No. 6-1 at 25–26. As relevant to this appeal, the ALJ determined at step three that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Appendix 1 provides a listing of impairments, including mental impairments. *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020) (citing

4

20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.00 *et seq.*, 112.00 *et seq.*).  In reaching this conclusion, the ALJ evaluated the "paragraph B" functional areas, which are: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting, or managing oneself." *Anthony M.* v. *Commissioner*, Civil Action No. SAG-19-651, 2020 WL 434581, at *2 (D. Md. Jan. 28, 2020) (citing 20 C.F.R. § 404.1520a).  In pertinent part, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace based on the following:

> The claimant alleged that he has limitations in concentrating, following instructions, and completing tasks.  On the other hand, the claimant has reported his hobbies to include reading and building model trains, which require[ ] some concentration and persistence.  He has also reported he is able to follow a recipe, and he described a variety of daily tasks that require some concentration, persistence, and pace, such as managing his finances, doing household chores, and driving.  Throughout the record, the claimant did complain of difficulty concentrating.  However, his concentration was intact, he had logical and goal directed thought processes, and he was not described as overly distractible or slow.

ECF No. 6-1 at 20 (internal citations omitted).[4]  Before continuing to the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform light work . . .  except he can operate hand controls with his left hand frequently.  He can occasionally reach overhead to the left.  He can handle items frequently with his left hand.  He can climb ramps and stairs frequently.  He can climb ladders, ropes, or scaffolds rarely, meaning less than occasionally but more than never.  He can stoop and crouch frequently.
>
> He is able to perform simple, routine tasks and simple work-related decisions.  He is able to interact with supervisors, coworkers, and the public occasionally.

*Id.* at 21 (bold removed, line break added).

---

[4]  A "moderate" limitation, which falls in the middle of a five-point rating scale, means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c).

On appeal, this Court found that the ALJ did not adequately explain why Plaintiff's concentration, persistence, and pace limitation could be accommodated by the limitations described in the residual functional capacity finding. *John A. I*, 2021 WL 4025838 at *1 (citing *Mascio*, 780 F.3d at 638). The Court found that the ALJ's finding of Plaintiff's moderate limitation in concentration, persistence, and pace were supported by substantial evidence, but that the "ALJ failed to incorporate any limitations into the claimant's [residual functional capacity] to account for these limitations, or explain why they do not translate into [such] a limitation." *Id*. at *3 (internal quotations and citation omitted). Thus, the Court concluded that "absent an explanation by the ALJ, the Court is left to speculate on how the [residual functional capacity] accounted for [Plaintiff's] difficulties in these areas" and the absence of this explanation "makes it impossible for this Court to conduct the necessary review." *Id*. Thereafter, the Appeals Council vacated the agency's final decision and remanded the case to the Commissioner for further proceedings consistent with this Court's Order. ECF No. 6-2 at 167.

**D.    ALJ Decision II and *John A. II***

On remand, the second ALJ engaged in the five-step sequential evaluation and again concluded that Plaintiff was not under a disability as defined in the Act, and the SSA had properly denied his application for benefits. ECF No. 6-2 at 82–83. As relevant here, the ALJ again found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace based on an analysis nearly identical to that in ALJ Decision I. *Id*. at 75–76. Before continuing to the fourth step, the ALJ determined Plaintiff's residual functional capacity and included the following concentration, persistence, pace limitation:

> Avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others); Able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated with normal breaks.

*Id.* at 76–77 (bold removed).  In support of his residual functional capacity determination, the ALJ explained that he had accounted for Plaintiff's moderate concentration, persistence, and pace limitation:

> by finding he must avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others) and finding that he is able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task, which can be accommodated with normal breaks (780 F.3d 632 (4th Cir. 2015)).

*Id.* at 79.

On appeal, this Court noted that the ALJ included two limitations in the residual functional capacity finding to "account[ ] for" Plaintiff's concentration, persistence, and pace limitations: "(1) restricting Plaintiff from 'work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)' and (2) limiting Plaintiff to 'perform[ing] work activities for up to 2 hours at a time'—a limitation that the ALJ determined could 'be accommodated with normal breaks.'" *John A. II*, 2024 WL 1465925, at *3.  The Court found, however, that the ALJ "did not explain how either of these limitations were intended to address Plaintiff's moderate [concentration, persistence, and pace] limitations" and "fail[ed] to explain how the evidence specifically supports the [residual functional capacity's] provisions regarding production-rate pace or working in two-hour increments." *Id*.  The Court directed the ALJ on remand to "either: (1) explain how the [residual functional capacity] addresses Plaintiff's moderate [concentration, persistence, and pace] limitations or (2) explain why no [residual functional capacity] limitation is necessary to address these limitations." *John A. II*, 2024 WL 1465925, at *4.  Thereafter, the Appeals Council vacated the agency's final decision and remanded the case to the Commissioner for further proceedings consistent with this Court's Order.  ECF No. 6-9 at 57.

**E.    ALJ Decision III**

On remand, the ALJ found at step one of the five-step sequential disability evaluation that Plaintiff did not "engage in substantial gainful activity during the period from his alleged onset date of October 26, 2015, through his date last insured of March 31, 2016." ECF No. 6-8 at 121 (bold removed). At step two, the ALJ found that Plaintiff suffered from the severe impairments of "unspecified depressive disorder, generalized anxiety disorder, cervical/thoracic degenerative disc disease, and obesity." *Id*. at 122 (bold removed). At step three, he determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 123 (bold removed). As relevant to this appeal, the ALJ again found a moderate limitation in concentrating, persisting, or maintaining pace based on the Plaintiff's testimony and participation in a four-month Compensated Work Therapy Program for veterans at the National Archives in 2016. *Id*. at 121, 125. Before continuing to the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform light work . . . except he is occasionally able to climb ramps or stairs; never able to climb ladders, ropes or scaffolds; frequently able to balance; occasionally able to stoop, kneel, crouch or crawl; is limited to frequent use of the left upper extremity for overhead reaching or operation of hand controls; is limited to frequent use of the left upper extremity for fine fingering or grasping/handling of small objects; avoid concentrated exposure to vibration; avoid work at unprotected heights or around dangerous moving machinery (i.e. fork lifts, etc.);
>
> is able to understand and carry out simple instructions and routine, repetitive tasks; is able to apply common[-]sense understanding to carry out detailed, but uninvolved, instructions;
>
> must avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others); and is able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated with normal breaks.

> He is occasionally able to change activities or work settings during the workday without it being disruptive; occasionally able to deal with changes in a routine work setting; and is able to have occasional interaction with supervisors, co-workers, and/or the general public.

*Id*. at 126 (bold removed, line breaks added).  At the fourth step, the ALJ noted that Plaintiff's past work included bicycle repairer and determined that Plaintiff "was unable to perform any past relevant work."  *Id*. at 130 (bold removed).  Lastly, at the fifth step, the ALJ determined that considering Plaintiff's "age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [he] could have performed," and therefore Plaintiff was not "under a disability" as defined in the Act, and the SSA properly denied his application for benefits.  *Id.* at 130–131 (bold removed).

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ failed to comply with prior remand orders and provide a reviewable explanation of how the residual functional capacity assessment addressed Plaintiff's moderate concentration, persistence, and pace limitations.  ECF No. 10 at 8.  The Commissioner argues the opposite.  ECF No. 13 at 14.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)).  The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."  *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Factual findings supported by substantial evidence "shall be conclusive."  42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019).  Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642.  The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997).  Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015).  "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B.    Mental Impairments and the Residual Functional Capacity Determination**

An ALJ must follow the special-technique regulation, 20 C.F.R. § 404.1520a, "[w]hen evaluating and documenting the severity of a claimant's mental impairment at steps 2 and 3— and its concomitant impact on the [residual functional capacity] assessment relevant to step 4." *Patterson*, 846 F.3d at 659.  The severity determination is distinct from the assessment of residual functional capacity, which occurs after step three. *See, e.g.*, *Anthony M.*, 2020 WL

434581, at *3 (explaining that "the limitations identified in the 'paragraph B' criteria are not [a residual functional capacity] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process") (internal quotations and citations omitted). A claimant's residual functional capacity is determined using a two-step process.  The ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related abilities on a function-by-function basis."  Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474-01, 34,475 (July 2, 1996)).  In so doing, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'"  *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188) (alteration in original); *see also* SSR 96-8p, 61 Fed. Reg. at 34,477 (stating that when assessing a claimant's residual functional capacity, an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not severe").  "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and nonexertional functions.'"[5] *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018) (quoting SSR 96-8p, 61 Fed. Reg. at 34,476).  The ALJ then expresses a claimant's residual functional capacity "in terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 404.1567 (defining the physical exertion requirements of each exertional level of work).

---

[5] "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996).  "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes. *Id.*

11

While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, the United States Court of Appeals for the Fourth Circuit has held that this analysis does not need to be explicit. *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis"). Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two." *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."). As relevant here, remand may be appropriate where the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review," *Thomas*, 916 F.3d at 312, or does not adequately address a claimant's mental impairments or explain why no functional limitations are warranted, *John A. II*, 2024 WL 1465925, at *4; *John A. I*, 2021 WL 4025838, at *3.

Here, the ALJ evaluated the severity of Plaintiff's mental impairments by assessing his limitations in the "paragraph B" functional areas. ECF No. 6-8 at 124–125. With respect to the third functional area, the ALJ noted that the claimant's testimony "discussed how he was mostly having bad days . . . to the point he was mostly having to step away due to his symptoms and flashbacks." *Id.* at 125. He further noted that mental status examinations showed that Plaintiff had nightmares, scanning, and "mental health symptoms more related to being unemployed," but that these examinations also mention his thought process as "goal directed and intact, without

hallucinations, and calm." *Id*. The ALJ noted that Plaintiff described his "strengths as including attention to detail" and "expressed interested in learning complicated subjects, bragged about the new skills he learned, did not report issues such as fleeing from work" while participating in a work therapy program, for which he "was even offered jobs." *Id*. The ALJ then "explain[ed] the nexus" between his finding that Plaintiff has a moderate limitation in concentration, persistence, and pace and the residual functional capacity limitations:

> Because of what appeared to be mostly manageable PTSD type symptoms that could interfere to some degree with work, the claimant should avoid work requiring a high production-rate pace, with the claimant able to otherwise perform work tasks for two-hour periods, with any distractions able to be accommodated during standard breaks, as the claimant seemed able to do in the program he was in.

*Id*. at 125. This analysis precludes meaningful review for several reasons.

First, there is an inadequate explanation as to how avoidance of "high production-rate pace" work accounts for Plaintiff's moderate concentration, persistence, and pace limitation. Indeed, this provision appears to be aimed at addressing a different paragraph B functional area limitation. At step three, the ALJ discussed the impact of Plaintiff's PTSD in connection with interacting with others, which is the second paragraph B functional area. *Anthony M.*, 2020 WL 434581, at *2; ECF No. 6-8 at 124–125 (discussing the impact of Plaintiff's PTSD, as including his ability to interact with others, including supervisors; discomfort with crowds; and mood swings). In this analysis, the ALJ noted that the restriction on "high production-rate pace" work in Plaintiff's residual functional capacity was based on his ability to interact with others, not his concentration, persistence, and pace limitation. *Id*. at 125 ("Furthermore, partially due to this finding, the undersigned has restricted the claimant from assembly line type work, where the claimant would be working near others and relying on them, some of whom may not be up to the claimant's standards.").

Second, the ALJ's limitation of working no more than two hours without a break does not address Plaintiff's limitation because, standing alone, "accommodating time off-task with normal scheduled breaks . . . is insufficient to account for moderate [concentration, persistence, and pace] limitations because normal breaks are customary even for workers *without* [concentration, persistence, and pace] limitations." *Mary G.* v. *Bisignano*, Civil Action No. CDA-24-1473, 2025 WL 2097423, at *5 (D. Md. July 24, 2025) (emphasis in original); *accord Kevin R.* v. *Kijakazi*, Civil Action No. BAH-22-2985, 2023 WL 5831182, at *3 (D. Md. Sept. 8, 2023); *Richardson* v. *Berryhill*, Civil Action No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018); *Ludlow* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016); *see also* Social Security Ruling 96-9p, Titles II and XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for less than a Full Range of Sedentary Work, 1996 WL 374185, at *6 (July 2, 1996) (noting that a normal workday consists of "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").[6]

Finally, the ALJ's reliance on Plaintiff's participation in a compensated work therapy program does not adequately support the two-hour concentration, persistence, and pace limitation within his residual functional capacity determination. ECF No. 6-8 at 125. To be

---

[6] The Administrative Law Judge's other limitations—such as being limited to understand and carry out simple instructions and routine, repetitive tasks; occasionally able to deal with changes in a routine work setting; and being able to have occasional interaction with supervisors, co-workers, and/or the general public (ECF No. 6-8 at 125–126)—"appear to relate to areas of mental functioning *other* than concentration, persistence, or maintaining pace." *Chad H.* v. *Kijakazi*, Civil Action No. BAH-22-1241, 2023 WL 2837524, at *4 (D. Md. April 6, 2023) (emphasis in original; citation omitted); *see also Deangelo S.* v. *Bisignano*, Civil Action No. TJS-25-417, 2026 WL 84270, at *2 (D. Md. Jan. 12, 2026) (finding that "limitations that [Plaintiff] can remember and carry out only simple instructions and only occasionally interact with the public, coworkers, and supervisors . . . address [his] ability to handle complexity and to interact with others, but they do not address his limitations in maintaining concentration, persistence, or pace").

sure, Plaintiff's participation in the compensated work therapy program "may show that [he has] the necessary skills and ability to work at the substantial gainful activity level." 20 C.F.R. § 416.973(c). But when assessing daily activities, an "ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [the claimant] can perform them." *Oakes* v. *Kijakazi*, 70 F.4th 207, 216 (4th Cir. 2023) (emphasis in original) (quoting *Woods* v. *Berryhill*, 888 F.3d 686, 694) (4th Cir. 2018)). Here, Plaintiff testified that his compensated work therapy program "involved lifting heavy boxes, loading them on to carts or pallets. And then using pallet jacks to pull them and put them in a truck. And that was basically it." ECF No. 6-1 at 44. The ALJ determined that Plaintiff was "able to otherwise perform work tasks for two-hour periods, with any distractions able to be accommodated during standard breaks, as [he] seemed able to do in the program he was in." ECF No. 6-8 at 125. Yet, the ALJ's decision is devoid of any discussion of Plaintiff's responsibilities, work environment, schedule, working hours, or accommodations he received at his compensated work therapy program that would indicate he is capable of full-time employment or performing work tasks for two-hour periods. *Id.* at 123–130. Further, the ALJ stated that Plaintiff "reported there were no concerns over his work" at the National Archives, implying that Plaintiff was able to work with no issues and no negative feedback. *Id*. at 125 (citing Exhibit 1F at 97, 104, 107). The cited evidence, however, reflects that an individual associated with the compensated work therapy program asked Plaintiff "if he had any concerns and he stated no," not that Plaintiff's supervisors had "no concerns" about his work. ECF No. 6-1 at 358 (Exhibit 1F at 104).

In sum, the ALJ's finding that Plaintiff has a moderate concentration, persistence, and pace limitation required that he include a corresponding limitation in the residual functional capacity determination or explain why no such limitation was necessary. The ALJ's decision suffers from precisely the same reversable error as that in *John A. II*, 2024 WL 1465925, at *3.

15

## III.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.

Date:  June 16, 2026

_____/s/_____
Erin Aslan
United States Magistrate Judge